(85 South. 330)

No. 23484.

### FICKLEN v. CITY OF NEW ORLEANS et al.

(June 10, 1920.)

*(Syllabus by the Court.)*

**1. Taxation** ⬉122—**Capital stock and shares not taxable at the same time.**

Seeking the intention of the General Assembly, and considering that the Constitution requires that all property shall be taxed, and that taxation should be equal and uniform throughout the respective taxing districts, but that it does not require that the same property shall be taxed twice in the same year, the court finds that it is not the intention of the existing law to tax both the capital stock of banks and other corporations and the shares of such stock in the hands of the holders at one and the same time.

**2. Taxation** ⬉30—**Taxing authorities cannot supply omission by General Assembly.**

Whatever may be the power or duty of the General Assembly, under the Constitution with reference to taxation, its failure to impose a particular tax cannot be made good by the assessing authorities.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by Mrs. John R. Ficklen against City of New Orleans and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Harry P. Sneed, of New Orleans, for Board of State Affairs and State Tax Collector.

George H. Terriberry, of New Orleans, for Board of Assessors.

A. M. Buchmann, of New Orleans, for appellant City of New Orleans.

Spencer, Fenner, Gidiere & Phelps, of New Orleans, for appellee.

### Statement of the Case.

MONROE, C. J. This is an action for the cancellation of an assessment of $32,150 for state and city taxes of 1918, on certain shares of stock owned by plaintiff, in corporations other than banking companies or associations, organized in states other than Louisiana.

[1] The facts are undisputed, and the question for decision is whether any tax has been imposed upon such shares by the law of this state. The district court, following the last decisions of this court, handed down something more than 12 years ago in the cases of Chassaniol v. Board of Assessors, 120 La. 777, 45 South. 604, and Allgeyer v. Same, 121 La. 149, 46 South. 134, respectively, decided that no such tax has been imposed, and gave judgment ordering the cancellation as prayed for. The taxing authorities have appealed, and ask us to overrule those decisions. In acting upon that request, we are bound to consider that the interpretation of a state law placed thereon by the court of last resort in a state establishes a rule of property agreeably to which, whether correctly or incorrectly established, all persons may enter into contracts assured of the protection of the Constitution of the United States against subsequent legislation or subsequent interpretations of the same law (Louisiana ex rel. Southern Bank v. Pilsbury, Mayor, 105 U. S. 278, 26 L. Ed. 1090), and are also bound to consider that, whether their business transactions are in the nature of contracts which are so protected, or consist of investments of the funds of widows and orphans, or of their own funds, they make such investments upon

the faith of the most authoritative assurance that the state of Louisiana can give as to its then existing laws prescribing the taxation which may affect their value, and hence that, the law remaining unchanged, the interpretation should not be changed to their prejudice save as a matter of paramount necessity.

We know that the capital stock of national banks, save as invested in real estate, has always been exempt from state taxation, and that the requirements with regard to such taxation of the shares in the hands of the shareholders have been that it should not be at a greater rate than that assessed upon other moneyed capital in the hands of individuals, and that such shares owned by nonresidents should be taxed in the place where the bank was located. Comp. Stat. U. S. § 9784.

We know also that our Constitution provides, and has provided, that "all property shall be taxed in proportion to its value," and that no property shall be exempt from taxation except that enumerated. Const. of 1879, arts. 203, 207; Const. of 1898, arts. 225, 230.

Pretermitting, for the moment, the question whether the taxation of the capital stock of a corporation and also of the shares in the hands of the shareholders is double taxation, it was open to the state to tax both the capital stock and the shares of any corporation except a national bank. It is well-accepted doctrine that double taxation is never to be presumed. Tennessee v. Whitworth, 117 U. S. 129, 6 Sup. Ct. 645, 29 L. Ed. 830. Moreover, as the state has no power to tax the capital stock of the national banks, it is clear that the imposition of a tax on both the capital stock and the shares of stock of the state banks would have placed the latter at a great disadvantage, if not put them out of business; and in the meanwhile it was necessary to observe the rule of equality and uniformity of taxation between the state and the national banks, and between the citizen stockholders in such banks and in other corporations organized here or elsewhere. In the first tax law, enacted after the adoption of the Constitution of 1879, therefore, it was provided that there should be no assessment of the capital stock of any national or state bank or other corporation whose capital stock was represented by shares, but that the shares should be assessed to the owners, and the tax paid by the bank or other corporation, after deducting therefrom the pro rata attributable to such shares of the taxes paid by the corporation on property owned by it and specifically assessed, such as real estate, as also the taxes that may have been paid on property found to be exempt from taxation. Act 77 of 1880, § 48, p. 102. The statute made it plain that it was not the intention of the General Assembly to impose a tax upon both the capital stock and the shares of any corporation, that, in taxing the shares alone, it was the intention that deduction should be made on account of all property in which the capital stock was invested that was exempt from taxation or upon which taxes were specifically assessed. And, in view of the constitutional requirement that "all property shall be taxed," and the absence of any requirement of double taxation, the only permissible theory that can be adopted to account for that scheme of taxation is that the lawmakers were of opinion that the taxation of both capital and shares would be double taxation, and that such taxation did not meet with their approval. Some such idea having been expressed in the opinion in the Chassaniol Case, supra, the learned counsel who here represents the taxing authorities comment upon it as follows:

"We submit that the above dictum show confusion as to what is property of a corporation. The property of a corporation is one

thing, but the shares of stock in the hands of shareholders are in no sense a part of the property of the corporation. They are a separate and distinct entity, and, as such, are taxable separately and apart from the property of the corporation; and this is in no sense dual taxation. This principle is so elemental in the law of taxation that we consider it unnecessary to cite the hundreds of authorities," etc.

There is no doubt that the weight of authority at this time sustains the fiction of the law (we should hardly call it a principle, nor do we recognize it as elementary) as thus stated by the learned counsel, a fiction of "the law of taxation" which is equally remarkable for the audacity of its conception as for its practical utility in the matter of finding property to assess. There are those, however, who find it difficult, even in the interest of the public fisc, to disabuse their minds of the impression that, the whole of a thing being constituted of its aggregate parts, the parts must be affected by whatever affects the whole, and that, a corporation being merely the custodian of the interests of its stockholders, whatever affects those interests in its hands affects them. As late as 1881 (a year after the statute to which we have referred was enacted) the Legislature of California appear to have amended section 3608 of its Political Code so as to read as follows:

"Shares of stock in corporations possess no intrinsic value over and above the actual value of the property of the corporation which they stand for and represent, and the assessment and taxation of such shares and also of the corporate property would be double taxation. Therefore all property belonging to corporations shall be assessed and taxed, but no assessment shall be made of shares of stock, nor shall any holder thereof be taxed therefor."

The provision quoted was sustained by the Supreme Court of California in People ex rel. Burke v. Badlam, 57 Cal. 594, on the ground that, where all the property of a corporation was assessed to it, the assessment of the shares to the shareholders would be double taxation, in violation of the California Constitution; and that ruling was affirmed in McHenry v. Downer, 116 Cal. 20, 47 Pac. 779, 45 L. R. A. 743 (decided in 1897). And in a note to the above-cited case (45 L. R. A. 756) we find the following:

"That certain corporations in the state are taxed on their capital stock instead of on the shares of such stock does not make a discrimination against shareholders of national banks whose shares are taxed. Mercantile Nat. Bank v. New York, 28 Fed. 776."

Act 96 of 1882 (being the general revenue law) § 1, declares that for the year 1882 and subsequent years the state tax shall be levied upon all property "situated within the state, * * * except such as is expressly exempted from taxation by the Constitution, and the term property, as herein used, means and includes," and there follows an enumeration of property to be taxed, including "all shares of stock and all other articles or things whatever, possessing any money value," to which is added: "This enumeration shall not be construed so as to exempt from taxation any property or values not enumerated herein."

The capital stock of corporations was not included in the enumeration, nor was there any specific reference to bank stock, as in the act of 1880, but, so far as we are informed, the capital stock of no corporation was subjected to taxation under the statute thus quoted.

In 1885 it was held that a share of stock in the Cotton Exchange previously held to be nontaxable was subject to taxation under sections 1 and 88 of the act of 1882.

Section 1 of Act 106 of 1890, p. 120, contained an enumeration of the property taxed, and read in part as follows:

"All shares of stock in all banking companies or associations incorporated or nonincorporated, chartered under the law of Louisiana, or under the laws of any other state than Louisiana, or under the laws of the national government; and all other articles and things whatever pos-

sessing any money value. This enumeration shall not be construed so as to exempt from taxation any property or values not enumerated herein; provided, that no articles or things herein enumerated shall be assessed more than once the same year. The above enumeration of assessable property is in no wise intended to apply to the assets of banking companies or associations whose shares of stock are assessable in lieu thereof under section 27, save in so far as declared in said section."

By section 27 it was provided that no assessment should thereafter be made upon the capital.stock, as such of any bank the stock of which was represented by shares, but that the shares should be assessed and the tax collected and paid by the corporation; that all real estate owned by the bank shall be assessed directly to the bank and the pro rata of such direct property tax proportioned to each share of capital stock, shall be deducted from the amount of taxes assessed to that share, etc.

Section 28 of the act declares:

"That all other corporations, save those enumerated in section 27 of this act [banking corporations] shall be assessed directly upon all property owned by such corporations, which is taxable under section 1 of this act; but unless three months prior and continuous ownership can be shown in any holdings of national, state or municipal bonds, or stock in any other corporation whatsoever, then the market value of such holdings shall be assessed to such corporation as so much 'money in possession.'"

The present law (Act 170 of 1898, p. 346) is the same, as to the question here presented, as the act of 1890, save that section 27 has been amended and re-enacted by Act 169 of 1916, p. 397, so as to require certain surplus and undivided profits of banks to be included in the capital stock subjected to taxation, after deducting the value of real estate used for the main or branch offices and separately taxed.

It will be seen, therefore, that in the latest legislation the General Assembly has shown its intention to avoid what it considers double taxation by excluding from the taxation of the capital of the banks such real estate as portions of that capital may be invested in; that whereas, by the act of 1880, the capital stock of all corporations was so excluded and only the shares were taxed, by the act of 1890 and the present law the exclusion of capital stock is applied only to national banks, and their shares in the hand of their shareholders are included in the enumeration, whereas the capital stock of all other banks are subjected to taxation, and their shares are not included in the enumeration of taxable property. It is true that the national banks are not mentioned in the act of 1916, but their capital stock is nontaxable under the federal law. It will be observed that, whilst the Constitution contemplates the taxing of all property save that which is expressly exempted, and requires the taxation to be equal and uniform throughout the respective taxing districts, it does not require, and has not defined, double taxation. It is therefore left to the lawmakers to determine in any given case whether or not such taxation is being, or should be, imposed, and they have declared in the act of 1890, as also in the act of 1898, that "no article or thing hereinabove enumerated shall be assessed more than once in the same year," and, with due respect to their own prohibition, have refrained from providing for the assessment in the same year of corporate stock in the hands of both the corporation and the stockholders. That our law makers may be out of line with the prevailing opinion in considering that such assessments would amount to assessing the same property twice in the same year is no doubt true, and it may be and is argued that there are certain general provisions in the acts of 1890 and 1898 from which the power to make those assessments may be deduced, but we are of opinion that the particular provisions, omitted as well as included, to which

we have referred, and which bear directly upon the question at issue, indicate the intention of their framers upon that particular subject with greater certainty than the general provisions, and especially than the definitions contained in section 91 of the act of 1898.

[2] "Taxation," this court has said, "is exclusively a legislative power, and, however clear the power or even the duty of the Legislature to levy taxes on any particular species of property, until that power has been exerted, the burden cannot be imposed. The legislative intention must be explicitly and distinctly shown, and cannot be extended by implication beyond the clear import of the language used. Cooley on Taxation, pp. 201, 202." Forman v. Board, 35 La. Ann. 825.

"The Constitution may not only have affirmatively designated certain things as objects of taxation, but expressly directed the General Assembly to tax them. Notwithstanding this fact, it may have failed so to do. This failure by the Legislature would not warrant assessors in remedying its action by assessing those objects of their own motion." State v. Board, 111 La. 1004, 36 South. 99.

In this instance seeking to obey the mandate of the Constitution requiring taxation to be equal and uniform the General Assembly has declared, in effect, that. all corporations, other than national banks, shall be taxed upon all the property owned by them. Act 170 of 1898; Act 169 of 1916. If, in addition to that, a tax is imposed upon the shares of the stock of such corporations, in the hands of the shareholders, the advantage given to the national banks, whose capital stock is nontaxable, will be so great that the state banks may not be able to survive, which, as we think, accounts for the deliberate omission to tax such shares.

The judgment appealed from is therefore affirmed.